**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| WALTER BERENS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROCKY MOUNTAIN ONCOLOGY CENTER, LCC, and INTEGRATED ONCOLOGY NETWORK LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Walter Berens ("Plaintiff"), on behalf of himself and all others similarly situated, states as follows for his class action complaint against Defendants, Rocky Mountain Oncology Center, LLC ("Rocky Mountain") and Integrated Oncology Network, LLC ("ION") (together with Rocky Mountain, "Defendants"):

## INTRODUCTION

1. This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendants (the "Data Breach").

2. ION, an oncology network that provides practice management and advisory services to physicians, groups, hospitals, and investors throughout the country, lost control over the highly sensitive personal information of its affiliated entities, including Rocky Mountain, and its clients' patients.

3. Rocky Mountain chose to allow ION access and control over its patients' highly sensitive personal and health information.

4. On information and belief, the Data Breach occurred between December 13, 2024,

and December 16, 2024, but was not discovered by Defendants until several months later. Following an internal investigation, Defendants learned the Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former patients' personally identifying information ("PII") and protected health information ("PHI") including but not limited to names, Social Security numbers, addresses, dates of birth, financial account information, diagnosis, lab results, medication, treatment information, health insurance and claims information, provider names, and/or dates of treatment. Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

5. On or around June 13, 2025–six months after the Data Breach began– Defendants finally began mailing notice letters to affected parties. Upon information and belief, Defendants are still in the process of providing formal notice to individual victims. Defendants also posted a notice of the Breach on their respective websites "(Online Breach Notice").[1]

6. Defendants took six months before informing Class Members even though Plaintiff and tens thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack. Upon information and belief, the Data Breach compromised the Sensitive Information of at least 113,000 individuals,[2] at least 10,268 of which were patients of Rocky Mountain.[3]

---

[1] Notice of Email Phishing Incident, https://ionetwork.com/notice-of-email-phishing-incident/ (last visited July 16, 2025).

[2] *PRIVACY ALERT: Integrated Oncology Network Under Investigation for Data Breach of Over 113,000 Patient Records*, Society of Utah Medical Oncologists, https://sumocancer.org/In_the_news?rkey=20250709DC26679&filter=14438 (last visited July 16, 2025).

[3] Breach Portal, Dept. of HHS Office for Civil Rights, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited July 16, 2025).

7. Defendants' failure to timely detect and report the Data Breach made its patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

8. Defendants knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of Sensitive Information misuse.

9. In failing to adequately protect Plaintiff's and the Class's Sensitive Information and failing to timely and adequately notify them about the breach, Defendants violated state and federal law and harmed an unknown number of their current and former patients.

10. Plaintiff and members of the proposed Class are victims of Defendants' negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendants with their Sensitive Information. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach.

11. Plaintiff is a former patient of Defendant Rocky Mountain and Data Breach victim.

12. Accordingly, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

13. Plaintiff, Walter Berens is a natural person and citizen of Evansville, Wyoming, where he intends to remain.

14. Defendant, Integrated Oncology Network, LLC, is a Tennessee Corporation, with

its principal place of business at 104 Woodmont Boulevard, Suite 500, Nashville, Tennessee 37205.

15. Defendant, Rocky Mountain Oncology Center, LLC, is a Wyoming Limited Liability Company, with its principal place of business at 104 Woodmont Boulevard, Suite 500, Nashville, Tennessee 37205.

## JURISDICTION & VENUE

16. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and Plaintiff and Defendants are citizens of different states.

17. This Court has personal jurisdiction over Defendants because both Defendants maintain their principal place of business in this District and do substantial business in this District.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND FACTS

***ION***

19. ION is a private oncology practice with a network of 49 centers across 14 states.[4] ION "partners directly with physicians, hospitals and other health care providers to offer the latest oncology and urology technologies to their patients."[5] ION boasts a total revenue of 45.4 million.[6]

20. ION's services are specialized for oncology-related corporations and healthcare

---

[4] Overview, ION LinkedIn, https://www.linkedin.com/company/integrated-oncology-network-llc/about/ (last visited July 16, 2025).
[5] *Id.*
[6] Zoominfo, ION, https://www.zoominfo.com/c/integrated-oncology-network/374061548 (last visited July 16, 2025).

providers who manage highly sensitive data, such as Rocky Mountain. ION thus must oversee, manage, and protect the Sensitive Information of its clients' patients.

21. On information and belief, these third-party consumers, including Rocky Mountain's patients, whose Sensitive Information was collected by ION, do not do any business with ION.

22. In working with third party consumers' highly sensitive data, ION advertises that "Integrated Oncology Network understands the importance of maintaining the confidentiality of your medical and personal information and is committed to maintaining the confidentiality of such information."[7] It further acknowledges that "Integrated Oncology Network is required by law to maintain the privacy of your personal information and to provide you with this notice of our legal duties and privacy practices with respect to such information."[8]

23. Despite recognizing its duty to do so, on information and belief, ION has not implemented reasonably cybersecurity safeguards or policies to protect its patients' Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, ION left significant vulnerabilities in its storage of Plaintiff's and the Class's Sensitive Information for cybercriminals to exploit and gain access to patients' Sensitive Information.

***Rocky Mountain Oncology Center***

24. Rocky Mountain is a cancer care center that offers comprehensive oncology services to the Wyoming community.[9]

25. As part of its business, Rocky Mountain receives and maintains the Sensitive

---

[7] ION, Privacy Policy, https://ionetwork.com/privacy-policy/ (last visited July 16, 2025).
[8] *Id.*
[9] Overview, Rocky Mountain LinkedIn, https://www.linkedin.com/company/rocky-mountain-oncology-center/about/ (last visited July 16, 2025).

Information of thousands of current and former patients. In doing so, Rocky Mountain implicitly promises to safeguard their Sensitive Information.

26. In collecting and maintaining its current and former patients' Sensitive Information, Rocky Mountain agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Information.

27. Despite recognizing its duty to do so, on information and belief, Rocky Mountain has not implemented reasonably cybersecurity safeguards or policies to protect its patients' Sensitive Information or supervised its IT or data security agents and employees, including ION, to prevent, detect, and stop breaches of its systems. As a result, Rocky Mountain left significant vulnerabilities in its storage of Plaintiff's and the Class's Sensitive Information for cybercriminals to exploit and gain access to patients' Sensitive Information.

***The Data Breach***

28. Plaintiff is a former patient of Rocky Mountain. As a condition of treatment with Rocky Mountain, Plaintiff provided Rocky Mountain with his Sensitive Information. Rocky Mountain used that Sensitive Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Sensitive Information to obtain treatment and care.

29. On information and belief, Rocky Mountain provided ION with Plaintiff's Sensitive Information. Thus, ION was granted access and custody of Plaintiff's Sensitive Information.

30. On information and belief, Defendants collect and maintain patients' Sensitive Information in their computer systems.

31. In collecting and maintaining the Sensitive Information, Defendants implicitly

agree that they will safeguard the data using reasonable means according to their internal policies and federal law.

32. According to the Breach Notice, Defendants discovered that between December 13, 2024, and December 16, 2024 "an email phishing incident that resulted in unauthorized access to patient information."[10] Following an internal investigation, Defendants discovered that "certain emails and SharePoint files were accessed by the unauthorized parties."[11]

33. Due to intentionally obfuscating language, it is unclear how long it took Defendnants to discover it had been subject to a three-day long breach.

34. In other words, Defendants' investigation revealed that their cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its patients' highly private Sensitive Information. Rocky Mountain knew or should have known that granting ION access to Plaintiff's Sensitive Information would result in a Data Breach due to ION's inadequate cybersecurity practices.

35. On or around June 27, 2025– six months after the Breach began– Defendants finally began notifying Class Members about the Data Breach through an Online Breach notice as well as began the process of formally notifying victims with letters.

36. Despite their duties and alleged commitments to safeguard Sensitive Information, Defendants do not in fact follow industry standard practices in securing consumers' Sensitive Information, as evidenced by the Data Breach.

37. In response to the Data Breach, Defendants contend that "we are providing additional cybersecurity training to our staff."[12] Although Defendants fail to expand on what the

[10] Notice of Email Phishing Incident, ION, https://ionetwork.com/notice-of-email-phishing-incident/ (last visited July 16, 2025).
[11] *Id.*
[12] *Id.*

alleged "additional cybersecurity training" is, such steps should have been in place before the Data Breach.

38. Through the Online Breach Notice, Defendants also recognized the actual imminent harm and injury that flowed from the Data Breach, so they encouraged breach victims to "review the statements they receive from their healthcare providers and health insurance plans. If they see any services that were not received, they should contact the provider or health plan immediately." [13]

39. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

40. On information and belief, Defendants plan to offer several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

41. Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

42. On information and belief, Defendants failed to adequately train and supervise their IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over their patients' Sensitive Information.

---

[13] *Id.*

Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach was a Foreseeable Risk of which Defendants were on Notice.***

43. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

44. In light of recent high profile data breaches at other healthcare partner and provider companies, Defendants knew or should have known that their electronic records and patients' Sensitive Information would be targeted by cybercriminals.

45. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[14] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[15]

46. Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [16]

47. Cyberattacks on medical systems and healthcare partner and provider companies

---

[14] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited July 16, 2025).

[15] *Id.*

[16] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited July 16, 2025).

like Defendants have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly." [17]

48. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry.

***Plaintiff's Experience***

49. Plaintiff is a former Rocky Mountain patient, having received services between approximately 2013-2016. As a condition of treatment with Rocky Mountain, Plaintiff provided it with his Sensitive Information. Rocky Mountain used that Sensitive Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Sensitive Information to obtain treatment and care.

50. On information and belief, Rocky Mountain shared Plaintiff's Sensitive Information with ION as part of its provision of oncology management services to Rocky Mountain. Rocky Mountain provided ION with Plaintiff's Sensitive Information.

51. Plaintiff provided his Sensitive Information to Defendants and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

52. Defendants deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him promptly.

53. As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice

[17] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited July 16, 2025).

of Data Breach and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

54. Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach.

55. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

56. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and as a result of the Data Breach.

57. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

58. In fact, following the Data Breach, Plaintiff has experienced an increase in spam and scam phone calls and text messages. This demonstrates that Plaintiff's information was stolen in the Data Breach and has been placed in the hands of cybercriminals.

59. Once an individual's Sensitive Information is for sale and access on the dark web, as Plaintiff's Sensitive Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[18]

60. Plaintiff has a continuing interest in ensuring that his Sensitive Information, which,

---

[18] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited July 16, 2025).

upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

61. Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendants.

62. As a result of Defendants' failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of their Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the Sensitive Information in their possession.

63. Stolen Sensitive Information is one of the most valuable commodities on the

criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

64. The value of Plaintiff's and the Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

65. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

66. One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

67. Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

68. The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Sensitive Information is being misused, and that

such misuse is fairly traceable to the Data Breach.

69. Defendants disclosed the Sensitive Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

70. Defendants' failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants Could Have Prevented the Data Breach***

71. Data breaches are preventable.[19] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[20] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[21]

72. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and

---

[19] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[20] *Id.* at 17.
[21] *Id.* at 28.

disciplined manner so that a data breach never occurs." [22]

73. In a Data Breach like the one here, many failures laid the groundwork for the Breach.

***Consumers Prioritize Data Security***

74. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[23] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[24]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[25]

c. 89% of consumers stated that "I care about data privacy."[26]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[27]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[28]

---

[22] *Id.*
[23] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited July 16, 2025).
[24] *Id*. at 3.
[25] *Id*.
[26] *Id*. at 9.
[27] *Id*.
[28] *Id*.

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[29]

***Defendants failed to adhere to FTC guidelines.***

75. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of Sensitive Information.

76. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that they keep;

b. properly dispose of Sensitive Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

77. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

78. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[29] *Id*. at 11.

79. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

80. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Violated HIPAA***

81. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [30]

82. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[31]

83. The Data Breach itself resulted from a combination of inadequacies showing Defendants failure to comply with safeguards mandated by HIPAA. Defendants' security failures

---

[30] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[31] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendants in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

84. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

***Defendants Fail to Comply with Industry Standards***

85. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

86. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement multi-factor authentication.

87. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

88. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both

the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

89. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security. Upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

90. Plaintiff sues on behalf of himself and the proposed Class, defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> All US citizens whose Sensitive Information was compromised in the Data Breach experienced by Defendants in December 2024, including all those citizens who received notice of the breach.

91. Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

92. Plaintiff reserves the right to amend the class definition.

93. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiff is representative of the Class, consisting of at least 113,000 members, far too many to join in a single action;

b. **<u>Ascertainability</u>**. Members of the Class are readily identifiable from information in Defendants' possession, custody, and control;

c. **<u>Typicality</u>**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **<u>Adequacy</u>**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with the Class's interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **<u>Commonality</u>**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

i. Whether Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

ii. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. Whether Defendants were negligent in maintaining, protecting, and securing Sensitive Information;

iv. Whether Defendants breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information;

v. Whether Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

vi. Whether Defendants' Breach Notice was reasonable;

vii. Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii. What the proper damages measure is; and

ix. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

94. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(Against Defendants on Behalf of Plaintiff and the Class)**

95. Plaintiff realleges all previous paragraphs as if fully set forth below.

96. Plaintiff and members of the Class entrusted their Sensitive Information to Defendants. Defendants owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Sensitive Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

97. Defendants owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendants' failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Sensitive Information —just like the Data Breach that ultimately came to pass. Defendants acted with wanton and reckless disregard for the security and confidentiality of

Plaintiff's and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

98. Defendants owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendants also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

99. Defendants owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security protocols. Defendants actively sought and obtained Plaintiff's and the Class's Sensitive Information.

100. The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendants hold vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the Sensitive Information —whether by malware or otherwise.

101. Sensitive Information is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

102. Defendants breached their duties by failing to exercise reasonable care in supervising their employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

103. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Negligence *Per Se***
**(Against Defendants On Behalf of Plaintiffs and the Class)**

104. Plaintiff realleges all previous paragraphs as if fully set forth below.

105. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's

Sensitive Information.

106. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect customers or, in this case, consumers' and patients' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff's and the members of the Class's Sensitive Information.

107. Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

108. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and their consumers, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

109. Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

110. Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are

bound by industry standards to protect confidential Sensitive Information.

111. Defendants violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

112. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

113. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

114. But for Defendants' wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

115. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiff

and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

116. Had Plaintiff and the Class known that Defendants did not adequately protect their Sensitive Information, Plaintiff and members of the Class would not have entrusted Defendants with their Sensitive Information.

117. Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

118. As a direct and proximate result of Defendants' negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

119. Additionally, as a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants' fails to undertake appropriate and adequate measures to protect their Sensitive Information in their continued possession.

**COUNT III**
**Breach of an Implied Contract**
**(Against Defendant Rocky Mountain On Behalf of Plaintiff and the Class)**

120. Plaintiff realleges all previous paragraphs as if fully set forth below.

121. Plaintiff and the Class delivered their Sensitive Information to Defendant Rocky Mountain as part of the process of obtaining treatment and services provided by Rocky Mountain.

122. Plaintiff and Class Members entered into implied contracts with Defendant Rocky Mountain under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

123. In providing their Sensitive Information, Plaintiff and Class Members entered into an implied contract with Defendant Rocky Mountain whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Sensitive Information.

124. In delivering their Sensitive Information to Defendant Rocky Mountain, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

125. Plaintiff and the Class Members would not have entrusted their Sensitive Information to Defendant Rocky Mountain in the absence of such an implied contract.

126. Defendant Rocky Mountain accepted possession of Plaintiff's and Class Members' Sensitive Information.

127. Had Defendant Rocky Mountain disclosed to Plaintiff and Class Members that Defendants did not have adequate computer systems and security practices to secure consumers' Sensitive Information, Plaintiff and members of the Class would not have provided their Sensitive Information to Defendant.

128. Defendant Rocky Mountain recognized that consumer's Sensitive Information is

highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

129. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant Rocky Mountain.

130. Defendant Rocky Mountain breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard its data.

131. Defendant Rocky Mountain breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their Sensitive Information.

132. As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' Sensitive Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Sensitive Information; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendants promised when Plaintiff and the proposed class entrusted Defendants with their Sensitive Information; and (h) the continued and substantial risk to Plaintiff's and Class Members' Sensitive Information, which remains in the Defendants' possession with inadequate measures to protect Plaintiff's and Class Members' Sensitive Information.

**Count IV**
**Breach of Contract**
**(Against ION On Behalf of Plaintiff and the Class)**

133. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

134. Defendant ION entered into various contracts with its affiliated organizations and oncology center client's, including Rocky Mountain, to provide oncology management services to them.

135. These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as it was their confidential medical information that Defendant ION agreed to collect and protect through its services. Thus, the benefit of collection and protection of the Sensitive Information belonging to Plaintiff and the Class were the direct and primary objective of the contracting parties.

136. Defendant ION knew that if it were to breach these contracts with its healthcare provider clients, the clients' patients, including Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their Sensitive Information.

137. Defendant ION breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' Sensitive Information.

138. As reasonably foreseeable result of the breach, Plaintiff and the Class were harmed by Defendant ION's failure to use reasonable data security measures to store their Sensitive Information, including but not limited to, the actual harm through the loss of their Sensitive Information to cybercriminals.

139. Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

## COUNT V
## Unjust Enrichment
## (Against Defendants On Behalf of Plaintiff and the Class)

140. Plaintiff realleges all previous paragraphs as if fully set forth below.

141. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

142. Plaintiff and members of the Class conferred a benefit upon Defendants in providing the Sensitive Information to Defendants.

143. Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiff and the Class. Defendants also benefited from the receipt of Plaintiff's and the Class's Sensitive Information, as this was used to facilitate the treatment, services, and goods it sold to Plaintiff and the Class.

144. Under principals of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff and the Class's Sensitive Information because Defendants failed to adequately protect their Sensitive Information. Plaintiff and the proposed Class would not have provided their Sensitive Information to Defendants had they known Defendants would not adequately protect their Sensitive Information.

145. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## PRAYER FOR RELIEF

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands that this matter be tried before a jury.

Date: July 16, 2025

Respectfully submitted,

By: /s/J. Gerard Stranch, IV
J. Gerard Stranch, IV (TN #23045)
Grayson Wells (TN #039658)
STRANCH, JENNINGS & GARVEY PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

Samuel J. Strauss*
Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

* *Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*